UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                    :
TRUMP YOUR COMPETITION, INC.,                       :   15 Misc. 00400
                                                    :
                    Plaintiff-Applicant,            :   In re Proceeding No. 91217618
                                                    :   (Pending before the United States
            v.                                      :   Trademark Trial and Appeal Board)
                                                    :
                                                    :
DONALD J. TRUMP,                                    :
                                                    :
                    Defendant-Opposer.              :
                                                    :
-------------------------------------------------------------------x


**DEFENDANT-OPPOSER'S CORRECTED MEMORANDUM IN OPPOSITION
TO PLAINTIFF-APPLICANT'S MOTION TO COMPEL DEPOSITION AND IN
SUPPORT OF DEFENDANT-OPPOSER'S MOTION FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 3

    A.    The TRUMP Trademarks ............................................................................................ 3

    B.    TYC's Mark .................................................................................................................. 6

    C.    Mr. Garten's Testimony in the TTAB Proceeding ..................................................... 8

    D.    The Offer of Eric Trump's Testimony and Sworn Written Responses from Mr. Trump in the TTAB Proceeding .................................................................. 9

ARGUMENT ............................................................................................................................ 10

    I.    TYC'S MOTION TO COMPEL IS IMPROPER BECAUSE IT IS MOTIVATED BY HARASSMENT. .......................................................................... 10

    II.    TYC'S SUBPOENA TO MR. TRUMP IS MOTIVATED BY HARASSMENT. ................................................................................................................ 13

    III.    MR. GARTEN AND ERIC TRUMP HAVE THE MOST KNOWLEDGE OF THE FACTS PERTAINING TO THE ISSUES IN THE TTAB PROCEEDING. ............................................................................................................ 15

CONCLUSION ........................................................................................................................ 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Baine v. Gen. Motors Corp.*, 141 F.R.D. 332 (M.D. Ala. 1991) ............................................11, 14

*Condit v. Dunne*, 225 F.R.D. 100 (S.D.N.Y. 2004) ......................................................................13

*Consol. Rail Corp. v. Primary Indus. Corp.*, Nos. Civ. 4927 (PNL), 92 Civ. 6313 (PNL), 1993 WL 364471 (S.D.N.Y. Sept. 10, 1993)................................................................16

*Filetech, S.A. v. Fr. Telecom, S.A.*, No. 95 Civ. 1848, 1999 WL 92517 (S.D.N.Y. Feb. 17, 1999) ....................................................................................................................................16

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99 (S.D.N.Y. 2013) ........................................................................................................................................13

*Harris v. Comput. Assocs. Int'l, Inc.*, 204 F.R.D. 44 (E.D.N.Y. 2001) ..................................11, 14

*Hughes v. Gen. Motors Corp.*, 1974 WL 168899 (S.D.N.Y. 1974) ..............................................10

*Joy v. North*, 692 F.2d 880 (2d Cir. 1982) ....................................................................................12

*Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118 (D. Md. 2009) ..............................................16

*Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D. R.I. 1985) ......................................................12, 15

*Rodriguez v. SLM Corp.*, No. 3:07CV1866 (WWE), 2010 WL 1286989 (D. Conn. Mar. 26, 2010)........................................................................................................................15

*Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc.*, No. CIV.A. 01-5627, 2002 WL 31356302 (E.D. Pa. Oct. 16, 2002) ..................................................................11, 14

*Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)......................................................................15

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ....................................................................12

*Socialist Workers Party v. Attorney General*, 565 F.2d 19 (2d Cir. 1977)..................................10

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers Inc.*, 07 Civ 2014 (SWK), 2008 WL 199537 (S.D.N.Y. Jan. 22, 2008)............................................................................12

*Thomas v. Int'l Bus. Machines*, 48 F.3d 478 (10th Cir. 1995) ...............................................11, 14

*Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697 (WK), 2002 WL 1967023 (S.D.N.Y. June 21, 2002) ..................................................................................................10

*Treppel v. Biovail Corp.*, No. 03 CIV. 3002 PKL JCF, 2006 WL 468314 (S.D.N.Y. Feb. 28, 2006) ..............................................................................................................................11, 14

*United States v. Berrios,* 501 F.2d 1207 (2d Cir. 1974) ...............................................................10

*United States v. Consol. Edison Co. of New York* (E.D.N.Y. Dec.15, 1988) 1988 WL 138275..........................................................................................................................................10

*United States v. Int'l Bus. Mach. Corp.* 66 F.R.D. 215 (S.D.N.Y.1974) ......................................10

*Yung v. Trump*, 11 CV 01413 (DLI)(VVP) (E.D.N.Y. Oct. 21, 2011) ......................................2, 9

*In re Zyprexa Injunction*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007) ..................................................12

## STATUTES AND RULES

Fed. R. Civ. P. 26(b)(1) .................................................................................................................13

Fed. R. Civ. P. 26(c) ..........................................................................................................1, 12, 15

Fed. R. Civ. P. 45(d) ........................................................................................................................1

§ 2(a) of the Lanham Act, 15 U.S.C. § 1052(a) ..............................................................................8

§ 2(d) of the Lanham Act, 15 U.S.C. §§ 1052(d) ...........................................................................8

§ 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).............................................................................8

§ 1(a) of the Lanham Act, 15 U.S.C. § 1051(a) ..............................................................................6

§ 15 of the Lanham Act, 15 U.S.C. § 1065.....................................................................................6

§ 33(b) of the Lanham Act, 15 U.S.C. § 1115(a) ............................................................................6

## REGULATIONS

37 C.F.R. § 2.123(b).....................................................................................................................10

T.B.M.P. § 703.01(b) ...................................................................................................................10

## TREATISES AND PERIODICAL MATERIALS

8A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2037 (3d ed. 2011) ........................15

Defendant-Opposer Donald J. Trump ("Mr. Trump") submits this memorandum (i) in opposition to the motion of Plaintiff-Applicant Trump Your Competition, Inc. ("TYC") to compel his trial testimony in a related proceeding between the parties (the "TTAB Proceeding") pending before the United States Trademark Trial and Appeal Board (the "TTAB"), pursuant to Fed. R. Civ. P. 45(d), and (ii) in support of his motion for a protective order pursuant to Fed. R. Civ. P. 26(c) precluding TYC from deposing him in the TTAB Proceeding.

## PRELIMINARY STATEMENT

In a calculated attempt to harass Mr. Trump, TYC improperly seeks to compel him to give trial testimony in the TTAB Proceeding even though Mr. Trump has had no involvement whatsoever in that matter and has no unique knowledge of the relevant facts and issues.

Rather, Mr. Trump himself has sworn under oath that, "[g]iven the breadth and scope" of his company, The Trump Organization ("Trump Org."), and its various businesses around the world, he had "delegated full responsibility and authority for the supervision" of the more than 500 trademarks containing or incorporating the "TRUMP" name (the "TRUMP Trademarks") that Trump Org. manages and controls to Alan Garten, Executive Vice President and General Counsel of Trump Org., who is the person most knowledgeable concerning the TRUMP Trademarks and all matters relating thereto. *See* Weiner Decl., Ex. A, Trump Decl., at ¶¶ 4-6.

Not only has Mr. Garten already given extensive testimony in the TTAB Proceeding, but Mr. Garten previously *volunteered under oath* to answer all of TYC's

questions pertaining to the TRUMP Trademarks and the TTAB Proceeding:

> I'm…offering myself to sit here and try to answer all your questions -- any question you may have -- whether it be for me or anyone else with whom I work, including my client…

*Id.*, Ex. C, Transcript of the Deposition of Alan Garten (Nov. 12, 2015) ("Garten Tr."), at 115:9-12.  Apparently unsatisfied, TYC's counsel claimed he had "questions that [he] would] wish to ask [Mr. Trump] directly."  *Id.* at 117:7-8.  When asked why he required the testimony of Mr. Trump, his response was simply, "I'm not going to answer questions."  *Id.* at 117:24-25.  To this day, TYC has provided no basis for questioning Mr. Trump.  *See* Weiner Decl., Ex. D, Garten Decl., at ¶ 12.

In addition to Mr. Garten, Mr. Trump's son, Eric Trump, Executive Vice President of Development and Acquisitions of Trump Org., is also knowledgeable concerning the management, licensing and use of the TRUMP Trademarks.  *See id.* at ¶ 7.  Though counsel for Mr. Trump has also offered to have Eric Trump to voluntarily appear for deposition in the TTAB Proceeding, TYC's counsel refused.

One New York federal court, however, has already accepted Mr. Trump's position in a similar context where an opposing party sought to depose him.  In *Yung v. Trump*, a case also involving the use of a trademark registered to Mr. Trump, the United States District Court for the Eastern District of New York held that:

> [Yung] shall take the deposition of Eric Trump and may then pursue a deposition of the defendant Donald Trump to the extent that Eric Trump is unable to answer relevant questions or his testimony discloses that Donald Trump had personal involvement in matters relevant to the instant dispute.

2

*Id.*, Ex. B, *Yung v. Trump*, 11 CV 01413 (DLI)(VVP) (E.D.N.Y. Oct. 21, 2011) (denying the plaintiff's subsequent motion to compel deposition of Mr. Trump and granting summary judgment against the plaintiff).

In short, the only reason TYC seeks to depose Mr. Trump is to harass him. Accordingly, the Court should deny TYC's motion to compel and grant Mr. Trump's motion for a protective order.

### STATEMENT OF FACTS

**A. The TRUMP Trademarks**

Mr. Trump is a well-known real estate entrepreneur, businessman and television celebrity. *See* Weiner Decl., Ex. D, Garten Decl., at ¶¶ 3, 4. Over the years, he has expanded his successful real estate, casino and resort empire internationally and has pursued a wide variety of business ventures. *See id.* at ¶ 3. Mr. Trump is the founder, President and Chairman of Trump Org., a multi-billion-dollar business enterprise that serves as the principal holding company for his various business ventures. *See id.* at ¶¶ 1, 4. As part of the regular operation of its business, Trump Org. controls, manages and licenses the TRUMP Trademarks in connection with a wide variety of products and services in jurisdictions all over the world. *See id.* at ¶ 4. Mr. Trump has delegated Mr. Garten, Executive Vice President and General Counsel to Trump Org., "full responsibility and authority" for "both the day-to-day and long-term management, enforcement and overall strategy associated with filing and prosecution of the TRUMP Trademarks." *See id.* at ¶ 5.

For decades, Mr. Trump has used marks consisting of or including his last name, "TRUMP," in commerce in the United States.  He also has published best-selling books and has launched successful businesses associated with his name, including but not limited to TRUMP real estate, hotel and entertainment services, TRUMP MODEL MANAGEMENT model and talent services, TRUMP ATTACHÉ inventory control services, TRUMP ONE incentive card services, and TRUMP CARD incentive card services.

From 2004 through 2014, Mr. Trump produced and starred in both *The Apprentice* and *The Celebrity Apprentice* television shows broadcast in the U.S. by the NBC television network, both of which centered on a competition among job applicants in which they are evaluated and hired based in part on their ability to advertise and market particular goods and services.  *See* Weiner Decl., Ex. C, Garten Tr., at 30:22 – 31:17.  These shows also spun off several international editions and have been among the most popular shows ever broadcast in the United States.  As a result of Mr. Trump's extensive business activities and public recognition, the TRUMP name and marks have not only become associated with luxury and prestige, they have become a famous household name and brand.

Mr. Trump is the owner of numerous U.S. federal trademark registrations for marks consisting of or including TRUMP for a wide variety of goods and services, including the following:

- TRUMP, U.S. Reg. No. 3,391,095, for "Entertainment services, namely, ongoing unscripted television programs in the field of

4

business, business disputes, and dispute resolution" in Int'l Cl. 41, registered on March 4, 2008, based on first use in 2004.

- TRUMP, U.S. Reg. No. 2,240,310, for "hotel services" in Int'l Cl. 43, registered on April 20, 1999, based on first use in 1995.

- TRUMP, U.S. Reg. No. 3,483,760, for "Restaurant services" in Int'l Cl. 43, registered on August 12, 2008, based on first use in November 2003.

- TRUMP MODEL MANAGEMENT, U.S. Reg. No. 2,991,841, for "Model and talent management services" in Int'l Cl. 35, registered on September 6, 2005, based on first use in 2003.

- THE TRUMP ORGANIZATION, U.S. Reg. No. 2,232,052, for "real estate planning, laying out, development and construction services of residential, industrial and commercial properties services" in Int'l Cl. 37, registered on March 16, 1999, based on first use in 1964.

- TRUMP ONE (stylized), U.S. Reg. No. 3,686,581, for "Customer recognition program in the nature of an incentive card for use in hotel, casino and resort facilities" in Int'l Cl. 35, registered on September 22, 2009, based on first use in 2007.

- TRUMP CARD, U.S. Reg. No. 2,414,739, for "customer recognition program in the nature of an incentive card for use in hotel, casino and resort facilities" in Int'l Cl. 35, registered on December 19, 2009, based on first use in 1989.

- TRUMP ATTACHÉ, U.S. Reg. No. 3,828,734, for, *inter alia*, "Inventory control, namely, personalized prestocking of kitchens, refrigerators and bars for hotel guests and hotel condominium unit owners" in Int'l Cl. 35, registered on August 3, 2010, based on first use in 2007.

- TRUMP ENTERTAINMENT RESORTS, U.S. Reg. No. 3,566,654, for, *inter alia*, "Resort lodging, hotel, restaurant and bar services" in Int'l Cl. 43, registered on January 27, 2009, first use date June 1, 2005.

- TRUMP NATIONAL GOLF CLUB, U.S. Reg. No. 2,269,568, for, *inter alia*, "social club and restaurant services" in Int'l Cl. 42, registered on August 10, 1999, first use date July 26, 1997.

- TRUMP INTERNATIONAL HOTEL & TOWER, U.S. Reg. No. 2,226,174 for, *inter alia*, "hotel services, restaurant services, and

health spa services" in Int'l Cl. 42, registered on February 23, 1999, first use date January 15, 1997.

Printouts from the electronic database records of the U.S. Patent and Trademark Office showing the current status and title of these registrations are attached to the Weiner Declaration as Exhibit E.  All of these registrations are valid, subsisting and in full force and effect, and constitute evidence of the validity of the TRUMP Trademarks and of Mr. Trump's exclusive right to use them in connection with the goods and services identified therein, pursuant to Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(a).[1]

### B. TYC's Mark

In November 2013, TYC filed an application to register the mark TRUMP YOUR COMPETITION in connection with "Advertising and marketing consultancy" in Int'l Cl. 35, Application Serial No. 86/116,800, based on first use on January 1, 2013, pursuant to Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a).  TYC has apparently begun using that mark in connection with the identified goods in a manner that infringes on Mr. Trump's marks:



Below are examples of Mr. Trump's famous and previously-registered marks in similar formats:

---

1. Reg. Nos. 3,391,095, 2,991,841, 2,240,310, 2,232,052, 2,414,739, 2,269,568, 2,226,174, 2,269,568 and 2,226,174 have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

6



TYC's mark is identical to Mr. Trump's famous TRUMP mark in sight and sound, except that TYC appends the descriptive phrase "your competition" to the end of its mark. Yet that phrase "your competition" exacerbates the likelihood of confusion because customers associate Mr. Trump's TRUMP mark with business competition, including the weekly and season-long television competitions broadcast on *The Apprentice*. TYC's registration of the TRUMP YOUR COMPETITION mark in connection with the services identified in its application is likely to cause confusion and lead consumers to falsely believe that TYC's services emanate from or otherwise are sponsored by or affiliated with Mr. Trump. Accordingly, registration of TYC's mark is inconsistent with Mr. Trump's prior rights and statutory grant of exclusivity of use.

Additionally, because Mr. Trump's TRUMP mark is famous and became famous prior to any date on which TYC can rely, TYC's registration of the TRUMP YOUR COMPETITION mark will damage Mr. Trump's TRUMP mark by treading on the goodwill associated with the mark and diluting its distinctiveness. Finally, because Mr. Trump's TRUMP mark contains the TRUMP name, and because TYC's use of "TRUMP"

is nearly identical to Mr. Trump's use of that mark, TYC's registration of the TRUMP YOUR COMPETITION mark will falsely suggest TYC's connection with Mr. Trump.

In response to TYC's actions, Mr. Trump opposes TYC's registration of TRUMP YOUR COMPETITION and alleges, among other things, violations of Section 2(d) of the Lanham Act (15 U.S.C. §§ 1052(d)), Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)), and Section 2(a) of the Lanham Act (15 U.S.C. § 1052(a)).

C. **Mr. Garten's Testimony in the TTAB Proceeding**

On November 12, 2015, Mr. Garten testified under oath in the TTAB Proceeding during Mr. Trump's testimony period as to the maintenance, use and policing of the TRUMP Trademarks.  *See* Weiner Decl., Ex. D, Garten Decl., at ¶ 9.  During Mr. Garten's deposition, counsel for Mr. Trump made clear on the record that TYC could cross-examine Mr. Garten on *any* issue.  *Id.*, Ex. C, Garten Tr., at 116:20-21.  Mr. Trump's counsel specifically stated that TYC could ask Mr. Garten any questions, and if for some reason Mr. Garten was unable to answer them, the parties could discuss ways in which they might obtain the answers TYC sought.  *Id.* at 116:22 – 117:4.  In response to this offer, TYC's counsel stated at the deposition that he had questions that he believed only Mr. Trump could answer.  *Id.* at 117:5-8.

TYC's counsel refused to pose those questions to Mr. Garten, and at no point indicated why he believed Mr. Trump has unique, personal knowledge relevant to the TTAB Proceeding.  TYC made no effort to depose Mr. Trump during the discovery phase of the TTAB Proceeding, nor did TYC propound any discovery that would suggest that Mr. Trump had unique or personal knowledge concerning the facts and

8

issues involved in the TTAB Proceeding.  Further, Mr. Trump did not name himself in either the initial disclosures or pre-trial disclosures, and therefore will not rely on his own testimony or statements in this matter with regard to the issues raised in that Proceeding.  *See* Weiner Decl., Ex. F, Defendant-Opposer's Initial Disclosures; *id.*, Ex. G, Defendant-Opposer's Pretrial Disclosures.

### D. The Offer of Eric Trump's Testimony and Sworn Written Responses from Mr. Trump in the TTAB Proceeding

In a good-faith effort to provide TYC with the opportunity to obtain the testimony that it seeks, on November 4, 2015, Mr. Trump supplemented his pre-trial disclosures to add as a witness Eric Trump, his son and Trump Org.'s Executive Vice President of Development and Acquisitions.  *See* Weiner Decl., Ex. H, Defendant-Opposer's Supplemental Pretrial Disclosures; *id.*, Ex. D, Garten Decl, at ¶ 6.  Eric Trump has been recognized by at least one court as an appropriate witness to give sworn deposition testimony as to the day-to-day management of the TRUMP Trademarks.  *See* Weiner Decl., Ex. B, *Yung v. Trump*, 11 CV 01413 (DLI)(VVP) (E.D.N.Y. Oct. 21, 2011).  Similar to Mr. Garten, Eric Trump has personal knowledge of facts surrounding the use and registration of the TRUMP Trademarks.  Moreover, counsel for Mr. Trump in the TTAB Proceeding expressly offered Eric Trump to voluntarily appear for deposition during TYC's testimony period at a mutually agreeable date, time and location.  *See id.*, Ex. D, Garten Decl., at ¶ 14.  Counsel for Mr. Trump was also willing (and continues) to offer TYC the opportunity to submit written questions to Mr.

Trump, to which Mr. Trump can reply by affidavit or declaration, pursuant to 37 C.F.R. § 2.123(b) and T.B.M.P. § 703.01(b).

TYC never responded to the offer to take Eric Trump's testimony and continues to demand that Mr. Trump appear in person to testify.

## ARGUMENT

### I.  TYC'S MOTION TO COMPEL IS IMPROPER BECAUSE IT IS MOTIVATED BY HARASSMENT.

Where a party seeks discovery, it must make a *prima facie* showing that the discovery sought is more than merely a "fishing expedition." *See Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (citing *United States v. Consol. Edison Co. of New York* (E.D.N.Y. Dec.15, 1988) 1988 WL 138275, *1–*2 (denying motion to compel where the requested discovery constituted no more than a "fishing expedition")). *See also United States v. Int'l Bus. Mach. Corp.* 66 F.R.D. 215, 218 (S.D.N.Y.1974) (burden is on moving party to establish relevance). "Disclosure should not be directed simply to permit a fishing expedition." *Socialist Workers Party v. Attorney General*, 565 F.2d 19, 23 (2d Cir. 1977) (citing *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974)). "[W]hen it is clear that the information [a party] wants is available through other employees of [the adverse parties], and such employees have been questioned…[t]he request borders on harassment…." *Hughes v. Gen. Motors Corp.,* 1974 WL 168899, at *1 (S.D.N.Y. 1974).

Even in the broader context of discovery, courts have consistently denied or curtailed requests to question "apex" senior executives, particularly when they lack

10

unique, personal knowledge of the underlying facts relevant to a case and the information sought can be gathered from others. *See, e.g.*, *Harris v. Comput. Assocs. Int'l, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) (denying request to depose Chairman/CEO on grounds that Chairman-CEO lacked personal knowledge of contested issues); *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 484 (10th Cir. 1995) (affirming protective order of the defendant's Chairman, reasoning in part, "[plaintiff] made no attempt to demonstrate that the information she seeks to obtain from [the Chairman] could not be gathered from other [of the defendant's] personnel, for whom a deposition might have been less burdensome").

Courts have not hesitated to deny similarly baseless requests to depose senior executives as unduly burdensome, oppressive and harassing — particularly where, as here, there has been no effort whatsoever to obtain the sought-after information from readily proffered alternative sources. *See, e.g.*, *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (finding that deposing defendant's Vice President would be "oppressive, inconvenient, and burdensome inasmuch as it has not been established that the information necessary cannot be had from [others]"); *Treppel v. Biovail Corp.*, No. 03 CIV. 3002 PKL JCF, 2006 WL 468314, at *3 (S.D.N.Y. Feb. 28, 2006) (depositions were improper with respect to the defendant's CEO and members of the defendant's Board of Directors where "plaintiff has not explained why the noticed individuals are believed to have personal knowledge of the underlying events, nor why that knowledge is believed to be unique. The plaintiff has made no attempt to depose any lower level executives . . ."); *Ronald A. Katz Tech. Licensing, L.P. v. Verizon Commc'ns, Inc.,* No. CIV.A.

01-5627, 2002 WL 31356302, at *5 (E.D. Pa. Oct. 16, 2002) (deposition would "would be a large and unnecessary burden" where it was undisputed that the defendant's high-ranking executive "has a very busy schedule and travels extensively," and where the defendant "has offered … other witnesses, including other executives," and the plaintiff has "not offered any sound basis for concluding that [executive] has knowledge of any relevant information."); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985) (refusing to compel oral deposition of the defendant's Chairman of the Board (who was also a named party to the action), recognizing that he was a "singularly unique and important individual who can be easily subjected to harassment and abuse").

Lastly, with regard to Mr. Trump's application for a protective order, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  The Court has "broad discretion" to dictate when and "what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  "Protective orders can take a variety of forms in order to fit the circumstances of the case." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers Inc.*, 07 Civ 2014 (SWK), 2008 WL 199537, at *2 (S.D.N.Y. Jan. 22, 2008).  When issuing protective orders, "courts balance the need for information against injury that might result if uncontrolled disclosure is compelled." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (internal quotation marks omitted).  "The balance struck should incorporate consideration of the overarching purpose of the discovery process…[which is] not to educate or titillate the public." *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

## II.     TYC'S SUBPOENA TO MR. TRUMP IS MOTIVATED BY HARASSMENT.

TYC's attempt to take Mr. Trump's testimony is an improper attempt by TYC to harass him.

The cases put forth by TYC in its moving brief stand for the unremarkable proposition that a party to an action is required to be deposed, *see* Moving Br. 7-8, without addressing that party's knowledge of the underlying issues in a given case. Moreover, they are distinguishable as they all pertain to seeking the deposition of an individual in the discovery phase of an action.  The scope of permissible pre-trial discovery is significantly broader than the standard for admissibility of evidence at trial. *See Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) ("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept."); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102 (S.D.N.Y. 2013) (alteration in original) (quoting Fed. R. Civ. P. 26(b)(1)) ( "To be relevant, the requested documents must at least 'appear[ ] reasonably calculated to lead to the discovery of admissible evidence.'").

Here, in contrast, TYC seeks Mr. Trump's trial testimony in the TTAB Proceeding, when it did not seek to depose Mr. Trump during the broader context of discovery.  TYC's failure to seek discovery in connection with Mr. Trump renders implausible its current claim that only Mr. Trump can provide critically important information.  TYC's failure to seek discovery of this supposedly indispensable, otherwise unobtainable information suggests that its attempt to only now procure that information lacks a legitimate, information-seeking motive.

13

Mr. Trump has provided Mr. Garten as a witness in the TTAB Proceeding and continues to offer Eric Trump as an additional witness. Both are involved in the day-to-day management and use of the TRUMP Trademarks, and both have personal knowledge concerning the details of his trademark applications and registration of those marks. *See, e.g.*, *Harris*, 204 F.R.D. at 46 ("When a [high level corporate executive] can contribute nothing more than a lower level employee, good cause is shown to not take the deposition."); *Thomas*, 48 F.3d at 483-84 (District Court did not abuse its discretion in issuing a protective order where party seeking deposition "made no attempt to demonstrate that the information … could not be fathered from other[s] … for whom a deposition might have been less burdensome"). TYC's repeated lack of effort — and at times, affirmative refusal — to attempt to obtain the information it seeks from voluntarily proffered alternative sources strongly suggests that it has a singular, impermissible motive in subpoenaing Mr. Trump: harassment. *See, e.g.*, *Baine*, 141 F.R.D. at 335 (deposition of high-ranking executive would be "oppressive, inconvenient and burdensome as it has not been established that the information necessary cannot be had from [others]" or that proposed deponent "has any superior or unique personal knowledge"); *Treppel*, 2006 WL 468314, at *3 (deposition of high-ranking executives would be allowed only "if and when [plaintiff] has developed a foundation for the belief that they possess personal, non-duplicative knowledge of relevant facts"); *Ronald A. Katz Tech. Licensing, L.P*, 2002 WL 31356302, at *5 ("forcing … important executive" to attend deposition would be a "large and unnecessary burden" where executive "has a very busy schedule and travels extensively" and the defendant had offered others for

deposition but the plaintiff's "only response appears to be that these lower level employees do not know the information that [it] seeks to discover") ; *Mulvey*, 106 F.R.D. at 366 (refusing oral deposition and instead limiting discovery to written interrogatories, recognizing that the defendant's Chairman "is a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse").

### III. MR. GARTEN AND ERIC TRUMP HAVE THE MOST KNOWLEDGE OF THE FACTS PERTAINING TO THE ISSUES IN THE TTAB PROCEEDING.

Eric Trump is a senior executive in The Trump Organization and manages the TRUMP Trademarks day-to-day. If, after taking his testimony, TYC still has legitimate questions of Mr. Trump it believes have gone unanswered, TYC can then submit a list of such questions. The parties will then meet and confer, and if they cannot agree on how to proceed, they will collectively seek the Court's assistance.

This proposal conforms to federal practice regarding "apex" witnesses under Rule 26(c). *See* 8A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2037 (3d ed. 2011) (prohibiting deposition of senior corporate executive "where there appears a clear risk of abuse because the proposed deponent is . . . a very high corporate officer unlikely to have personal familiarity with the facts of the case"); *see Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (requiring the plaintiff to depose lower-level employees prior to deposing the defendant's president who was "extremely busy and did not have any direct knowledge of the facts"); *Rodriguez v. SLM Corp.*, No. 3:07CV1866 (WWE), 2010 WL 1286989, *2 (D. Conn. Mar. 26, 2010) (compiling cases); *Minter v. Wells Fargo Bank,*

15

*N.A.*, 258 F.R.D. 118, 126 (D. Md. 2009) (apex deposition rule is "aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head—the top official, not because of any special knowledge of, or involvement in, the matter in dispute"); *Filetech, S.A. v. Fr. Telecom, S.A.*, No. 95 Civ. 1848, 1999 WL 92517, at *1-2 (S.D.N.Y. Feb. 17, 1999); *Consol. Rail Corp. v. Primary Indus. Corp.*, Nos. Civ. 4927 (PNL), 92 Civ. 6313 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (considering likelihood that deposition will result in business disruption and harassment).

## CONCLUSION

For the foregoing reasons, this Court should deny TYC's motion to compel and grant Mr. Trump's motion for a protective order.

Dated:  New York, New York
        January 4, 2016

                                    HUGHES HUBBARD & REED LLP


                                    By:_____/s/_____
                                        Daniel H. Weiner
                                        Eleni C. Saltos
                                    One Battery Park Plaza
                                    New York, New York 10004-1482
                                    (212) 837-6000
                                    daniel.weiner@hugheshubbard.com
                                    lena.saltos@hugheshubbard.com

                                    Attorneys for Defendant-Opposer